UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CV-1482(JMR/FLN)

| | | |
|---|---|---|
| Katherine Burks and Community Stabilization Project | ) | |
| v. | ) | ORDER |
| Mel Martinez, in his official capacity as Secretary of the United States Department of Housing and Urban Development, Bruce Van De Walker, Angela Van De Walker, and Capitol Plaza, L.L.C. | ) | |

This lawsuit is before the Court on plaintiffs' motion for partial summary judgment and defendants' motions for summary judgment. Plaintiffs seek declaratory judgment, and defendants seek dismissal of the lawsuit. All motions are denied.

I. Background

Capitol Plaza South is an apartment complex located in St. Paul, Minnesota. Defendants Bruce and Angela Van De Walker purchased the complex from the Department of Housing and Urban Development ("HUD") in 1979. HUD insured, but did not subsidize, the mortgage the Van De Walkers used to finance the purchase pursuant to § 221(d)(4) of the National Housing Act, codified at 12 U.S.C. § 1715*l*(d)(4). To obtain HUD insurance, the owners were required to enter into a "Regulatory Agreement for Multi-Family Housing Projects," which would remain in place as long as the mortgage was insured by HUD. Prepayment of the mortgage before its maturity on September 1, 2019, required HUD approval, and would, of

FILED OCT 10 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED____
DEPUTY CLERK'S INITIALS____

course, conclude HUD's insurance, thereby terminating the Regulatory Agreement.

The Regulatory Agreement provided that half of the units in the complex would be rent-subsidized through Housing Assistance Payments, as established by Section 8 of the United States Housing Act of 1937. The Regulatory Agreement also provided that a rent schedule for the complex must be approved by HUD, and that subsequent rent increases would be regulated by HUD and only permitted to the extent necessary to cover increases in operating costs.

Finally, the Regulatory Agreement provided, "If the mortgage is originally endorsed for insurance under Section 221 or 231, Owners shall in selecting tenants give to persons or families designated in the National Housing Act an absolute preference or priority of occupancy . . . ." (Reg. Agree. ¶ 5(b).) Plaintiffs claim this language established a rental preference for low-income families in both the rent-subsidized and non-rent-subsidized units. Defendants reply that this language established no rental preference for low-income families except for the Section 8 units, because the intended beneficiaries of non-subsidized mortgages insured pursuant to Section 221(d)(4) are moderate-income and displaced families, rather than low-income families.

In 1999, the Van De Walkers sold Capitol Plaza South to Capitol Plaza, L.L.C., and prepaid their HUD-insured mortgage after

receiving HUD's approval. HUD did not make any findings pursuant to Section 250 of the National Housing Act, codified at 12 U.S.C. § 1715z-15(a), before approving the prepayment, because it took the position that Section 250 does not apply to federally-insured mortgages pursuant to Section 221(d)(4). According to HUD, Section 250 applies only to federally-subsidized mortgages under Section 221(d)(5). Plaintiffs take the opposite position. Whether Section 250 findings are required for insured but non-subsidized mortgages is a predominant legal question in this case.

As part of the property transfer, Capitol Plaza, L.L.C., and HUD entered into a "Use Agreement," which provides that the new owners of Capitol Plaza South will continue Section 8 assistance to half of the units in the complex until September 1, 2019, the maturity date of the original mortgage insured pursuant to § 221(d)(4). The Use Agreement also provides that rents on the other half of the units will not exceed Section 8 Fair Market Rents.

Plaintiff Katherine Burks has resided in the complex since 1993. She does not live in one of the Section 8 subsidized units. Plaintiff Community Stabilization Project ("CSP") is an organization dedicated to preserving affordable housing. Plaintiffs challenge HUD's decision to permit the Van De Walkers to prepay their mortgage. They also challenge HUD's failure to make the findings required by Section 250. Plaintiffs seek both

injunctive and declaratory relief, and have moved for partial summary judgment on their claims for declaratory relief.

All defendants have moved for summary judgment. Defendant Mel Martinez, sued in his official capacity as Secretary of HUD, contends plaintiffs are not entitled to injunctive relief under the Administrative Procedure Act ("APA") and that they lack standing to seek injunctive or declaratory relief. Finally, he contends plaintiffs' claims fail on the merits.

Defendants Bruce and Angela Van De Walker join Martinez's arguments and contend they did not conspire to violate, nor did they violate, the National Housing Act. Defendant Capitol Plaza, L.L.C., joins the arguments of both Martinez and the Van De Walkers and contends plaintiffs have failed to meet their burden of proof with respect to their claims against it.

II. Discussion

A. Jurisdictional Questions

1. Injunctive Relief

Defendants first contend plaintiffs are not entitled to injunctive relief pursuant to the APA. The APA empowers a court both to "hold unlawful and set aside agency action," 5 U.S.C. § 706(2), and to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). Because plaintiffs do not seek to rescind the agency action of which they complain in that they do not seek to rescind the mortgage prepayment or "undo"

the sale of Capitol Plaza South, defendants claim 5 U.S.C. § 706(2) is inapplicable. Defendants also claim 5 U.S.C. § 706(1) is inapplicable, essentially because plaintiffs complain of HUD's action, not its inaction. Finally, defendants claim 5 U.S.C. § 704 bars injunctive relief.

a. <u>5 U.S.C. § 706(2)</u>

Plaintiffs do not seek to rescind HUD's decision allowing prepayment of the § 221(d)(4) mortgage that previously encumbered Capitol Plaza South. Instead, they ask the Court for an injunction mandating the continued imposition of certain terms of the Regulatory Agreement, as they understand them, on the property. For this reason, defendants contend equitable relief is not available pursuant to 5 U.S.C. § 706(2) because plaintiffs do not seek to "set aside" the transaction.

Plaintiffs respond that the APA's grant of authority to rescind the complained-of action does not mean that lesser equitable relief is not available. Plaintiffs rely on <u>NAACP v. Secretary of HUD</u>, 817 F.2d 149 (1st Cir. 1987). In that case, HUD had also argued, inter alia, that 5 U.S.C. § 706(2) was inapplicable because the plaintiff did not seek to "set aside" particular agency action. <u>See</u> <u>id.</u> at 160. The United States Court of Appeals for the First Circuit rejected HUD's reading of the statute stating: "the words 'set aside' need not be interpreted narrowly. A court, where it finds unlawful agency behavior, may

tailor its remedy to the occasion." Id.

Defendants correctly point out that this is the only case plaintiffs cite in opposition to their argument. Defendants also correctly cite several cases in which courts recognized, and sometimes exercised, their authority to wholly rescind agency action. But defendants fail to cite a case contrary to NAACP v. Secretary of HUD, or one that stands for the proposition that only injunctive relief wholly rescinding agency action is available pursuant to 5 U.S.C. § 706. Therefore, the Court concludes that plaintiffs may seek injunctive relief pursuant to the APA, even though they apparently do not seek to rescind the mortgage payment.

b. 5 U.S.C. § 706(1)

Even if 5 U.S.C. § 706(2) did not authorize the equitable relief sought by plaintiffs, 5 U.S.C. § 706(1) does so. Because plaintiffs seek to impose certain terms of the Regulatory Agreement on HUD and the current owners of Capitol Plaza South, defendants claim plaintiffs are not seeking to compel any HUD action required by a specific statute. Therefore, defendants claim plaintiffs are not entitled to injunctive relief pursuant to this section of the APA. Defendants cite several cases for the basic proposition that "section 706(1) applies to the situation where a federal agency refuses to act in disregard of its legal duty to act." See e.g., EEOC v. Liberty Loan Corp., 584 F.2d 853, 856 (8th Cir. 1978).

Defendants' argument fails because it mischaracterizes

plaintiffs' position. Plaintiffs claim HUD failed to make the findings required by Section 250 of the National Housing Act. If HUD failed to perform a duty imposed by law, the Court may compel it to do so pursuant to 5 U.S.C. § 706(1).

c. 5 U.S.C. § 704

This section of the APA provides that a court may review agency actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. According to defendants, this section bars injunctive relief, because plaintiffs have an adequate remedy outside the APA framework against their current and past landlords. In support of this argument, defendants cite New York City Employees' Retirement System v. SEC, 45 F.3d 7, 14 (2d Cir. 1995) ("We may not even entertain the claim against the agency, . . . if the plaintiffs have an adequate alternative legal remedy against someone else -- a remedy that offers the same relief the plaintiffs seek from the agency.").

Plaintiffs contend relief is not barred because (1) section 704 only bars additional judicial remedies when special and adequate review procedures for agency action exist already; (2) plaintiffs seek different remedies against the private defendants than they do against HUD; (3) claims against the private defendants would have to be implied from Section 250; and (4) Section 250 imposes obligations on HUD, not on the private plaintiffs.

The Court agrees with plaintiffs; they seek to impose their

interpretation of the Regulatory Agreement on both the current owners and HUD. Setting aside the disagreement about the disputed language in the Regulatory Agreement, the Regulatory Agreement, at a minimum, includes rent restrictions which would be imposed on the new owners, and also requires rent monitoring by HUD. Therefore, there is no adequate remedy against only the other parties to the action. In the first place, plaintiffs' complaint is with HUD in that they claim HUD acted contrary to law. But HUD's presence is also essential to the remedy plaintiffs seek.

2. Standing

Defendants also contend both plaintiffs lack Article III standing to pursue their claims. Standing requires three elements: injury in fact, causation, and redressibility. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical'." . . . Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. (citations omitted). Both plaintiffs satisfy these requirements.

a. Katherine Burks

Defendants contend Ms. Burks lacks standing to seek

declaratory or injunctive relief. They claim that, because injunctive relief is not authorized by the APA, Ms. Burks lacks standing to seek declaratory relief unless she has a special and ongoing interest in the issues presented or is likely to be exposed to the challenged action again.

Having framed the question this way, defendants make a singular argument: they argue it is unlikely that Ms. Burks will leave her current home at Capitol Plaza South and then take up residence in a different complex with a non-subsidized but HUD-insured mortgage that its owners wish to prepay. The Court agrees that this course of events is unlikely, but this line of reasoning is irrelevant to Ms. Burks' claim. She challenges HUD action that allegedly resulted in "continuing, present adverse effects." See Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (internal quotation omitted).

Given this, Ms. Burks easily satisfies the three requirements for standing. First, she alleges injury in fact due to rent increases beyond those needed for increases in operating expenses. Contrary to defendants' contentions, this is a present and continuing injury, not one that must be speculated about in the future. Second, this injury was caused by HUD's decision to allow prepayment of the insured mortgage; had HUD not allowed prepayment, the Regulatory Agreement would still be in force and bar such increases. Third, if Ms. Burks prevails on at least some of her

claims on the merits, her injury could be redressed by the Court if the Court were to order the terms of the Regulatory Agreement imposed on the current owners as plaintiffs ask the Court to do. Therefore, Ms. Burks has standing to challenge HUD's decision to allow prepayment and to seek both injunctive and declaratory relief.

b. Community Stabilization Project

An organization has standing to sue if it either satisfies the three-prong standing test itself, or has associational standing allowing it to sue on behalf of one of its members who herself has standing.

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1973).

Defendants contend CSP lacks associational standing solely because of their contention that Ms. Burks lacks standing. There is no dispute on the second two elements required for associational standing. Because the Court has determined that Ms. Burks has standing, however, and she is a member of CSP, CSP has associational standing.

Because of this determination, the Court need not reach the

question of whether CSP also has standing independently.

B. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for partial summary judgment, seeking a declaratory judgment that HUD improperly allowed the prepayment of the HUD-insured mortgage. This motion is denied, because the Court declines to exercise its declaratory power.

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration . . . ." 28 U.S.C. § 2201(a). District courts have broad discretion in deciding whether to entertain a declaratory judgment action. See generally Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). This discretion exists "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Id. at 282.

The Court declines to grant declaratory judgment at this time. In the Court's view, it is preferable to address the myriad of legal questions presented in the context of plaintiffs' request for injunctive relief.

C. Defendants' Motions for Summary Judgment

1. Mel Martinez

In addition to moving for dismissal on jurisdictional grounds, the basis of which is discussed and rejected above, Mr. Martinez moves for dismissal of this lawsuit on the merits. This motion is

denied.

2. Van De Walkers and Capitol Plaza, L.L.C.

These defendants also seek dismissal on the merits. Their motion is denied.

III. Conclusion

Accordingly, IT IS ORDERED that:

1. Plaintiffs' motion [Docket No. 20] is denied.

2. Defendants' motions [Docket Nos. 26, 28, and 33] are denied.

Dated: October 5th, 2003

JAMES M. ROSENBAUM
United States Chief District Judge